FARRELLY *vs.* MARIA LOUISA, (WOMAN OF COLOR.)

[PETITION FOR FREEDOM.]

1. *Who may institute suit for freedom.*—Section 2049 of the Code, respecting suits for freedom, is not confined in its operation to persons of African blood, but includes all persons who are claimed and held as slaves.

2. *Suppression of deposition on account of defective certificate of commissioner.*—Under the provisions of the Code, (§§ 2322–23,) the failure of the commissioner to certify that he has personal knowledge of the identity of the witness, or that proof of such identity was made before him, is good cause for the suppression of the deposition.

3. *Competency of vendor as witness for purchaser.*—In a statutory suit for freedom, the defendant's vendor is a competent witness for him, (Code, § 2302,) when it appears that he only sold and conveyed "his interest" in the petitioner as a slave.

4. *Proof of status of petitioner.*—In such action, the fact that the petitioner's mother, before and about the time of his birth, went at large, was treated and dealt with as a free person, was not under the control of any other person, and conducted herself as a free person, is competent evidence for the petitioner.

APPEAL from the City Court of Mobile.

Tried before the Hon. ALEX. MCKINSTRY.

THIS was a statutory suit for freedom, (Code, § 2049,) instituted by Maria Louisa, a woman of color, against Edward Farrelly, the appellant. The defendant denied the allegation of freedom, and insisted that the petitioner was his slave; and the cause was submitted to a jury on an issue of freedom *vel non.* Before the trial commenced, as appears from the bill of exceptions, the defendant moved the court to suppress the depositions of Edward Barrett and William Castell, which had been taken in behalf of the petitioner, "on the ground that the commissioner had not certified that he had personal knowledge of the witnesses, or that proof of their personal identity had been made before him." The court overruled the motion, and the defendant excepted. The certificate appended to said depositions, omitting the immaterial portions, is as follows: "I, James Y. Blocker," &c., "do hereby certify, that I caused Edward Barrett, William

Castell and Robert Ker, to come before me at the time and place hereinabove stated; that said witnesses were each duly sworn by me, and severally testified as is hereinabove set down; that the testimony of said witnesses was by me reduced to writing, except that of William Castell, which was written by himself in my presence; and that each of said witnesses subscribed his name to his own testimony in my presence, after the same had been by me read over to him. In testimony whereof," &c.

The petitioner examined one Mrs. Thompson as a witness, who testified, in substance, that she became acquainted with the petitioner's mother, in New Orleans, in 1834-5, and lived within one or two squares of her house; that her mother was a woman of yellow complexion, and, so far as witness observed, always acted as a free person; that she died in 1839, leaving the petitioner an infant about one year old. "The petitioner's counsel asked this witness, if the petitioner's mother was generally considered and called a free person; to which the witness answered, that she was generally so considered and called." To this question and answer each the defendant objected, and reserved exceptions to the overruling of his objections; and exceptions were also reserved by him to the admission of similar statements by other witnesses.

It further appeared, from evidence introduced by the petitioner, that after the death of her mother, as above stated, her father, a white man, placed her in the care of a Miss Richards in New Orleans; that she was afterwards seen and recognized in Mobile by several persons who had known her in New Orleans; that from 1844-5 to 1854-5, she was in the possession of one Burns, who claimed her as a slave, and exercised acts of ownership over her; and that in 1855, or soon afterwards, one Patrick Summer, of New Orleans, at the instance of some persons in Mobile, who had heard that the petitioner was free, came over to Mobile for her, and carried her with him to New Orleans. Some of the petitioner's witnesses further testified, that her mother seemed to be of Indian or Mexican descent, and had the characteristic features of an Indian Mexican or Mexican Indian. On the other

hand, the defendant adduced evidence tending to show, that the petitioner and her mother were slaves; and, for this purpose, offered the deposition of said Patrick Summer, who testified, that such was the fact; and further, that the petitioner had belonged to Miss Richards, from whom he purchased her, and that he afterwards sold "his interest" in her to the defendant. The court excluded the deposition of this witness from the jury, on motion of the petitioner, "on the ground that it appeared from the deposition itself that said Summer had sold the petitioner to defendant, and was, therefore, incompetent to testify in this case;" to which ruling of the court the defendant excepted.

There was other evidence in the case, but the material facts sufficiently appear from the above statement.

"The court charged the jury as follows: 'That the issue was, whether the petitioner was free or not; that it was immaterial whether or not the defendant in this case had title to her, if she was a slave; that by law, in this State, a person of color is presumed to be a slave, until it is proved that he or she is free; that this, however, applies only to Africans, or persons having negro blood; that if it was proved to their satisfaction that the petitioner's mother was an Indian or Mexican, this would remove the presumption of slavery arising from color, and they should find for the petitioner; that if her mother was a negro, or of African descent, the presumption would be that she was a slave; but that proof of the fact that her mother acted as a free person, would be evidence tending to repel that presumption; and that if the jury believed from the evidence that her mother was free, there was no necessity to show any record or paper evidence of her freedom, and the *onus* of showing that the petitioner was a slave would be thrown on the defendant.' To which charge, and each portion thereof, the defendant excepted."

The several rulings of the court to which exceptions were reserved, as above stated, are now assigned as error.

WM. G. JONES, for the appellant.

JNO. T. TAYLOR, *contra*.

STONE, J.—We cannot agree that the provisions of section 2049 of the Code are confined to persons of African blood. We think they embrace all persons who are claimed and held as slaves.

[2.] Under the principles we laid down in the case of Thrasher v. Ingram, 32 Ala. 645, and in Buford v. Gould, at the present term, the city court erred in refusing to suppress the depositions of the witnesses, Edward Barrett and William Castell.

[3.] The court erred, also, in excluding the evidence of the witness, Patrick Summer. Although he was Mr. Farrelly's vendor, yet that fact is shown only by his deposition, which was offered in evidence. In the same deposition it is shown that he, the witness, was the defendant's vendor only in this, that he had sold *his interest* in the petitioner to Farrelly. This language implies only a quit-claim, and not that the witness was bound to indemnify Farrelly, should his title fail. It is not, by anything in this record, made to appear that the record of recovery in this case can be evidence for or against him in another suit, in the legal sense of that term.—Code, § 2302; Harris v. Plant & Co., 31 Ala. 639; Rupert v. Elston, at the present term.

[4.] The questions raised on that part of Mrs. Thompson's testimony which was objected to, and on the charge, may be considered together. They present the question of the admissibility and competency of certain evidence to prove the *status* of the petitioner. We think it clearly competent, in such case, to prove that the mother of petitioner, before and about the time she gave birth to Louisa, went at large, uncontrolled in her movements, and that she was dealt with and treated as a free person; and that generally, her deportment was that of a person having control of her own movements. On such issue, it is also permissible to show, either that she was, or was not, under the direction and control of another. Whether such evidence is sufficient, or whether it is overturned by proof of ownership, is a question for the jury. Its weight must depend on the length of time and circumstances surrounding her, during which she is alleged to have been

mistress of her own movements.—Becton v. Ferguson, 22 Ala. 599. These rules are, perhaps, sufficiently definite to govern another trial.

Reversed and remanded.